**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

JUAN REYES,

    Plaintiff,

v.                                                     Civil Action No. 1:10cv112
                                                         Judge Keeley

WARDEN JAMES N. CROSS,
CAPTAIN T. BERGAMI,

    Defendants.

## REPORT AND RECOMMENDATION

### I. Procedural History

On July 26, 2010, the *pro se* plaintiff initiated this case by filing a civil rights complaint under 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

Plaintiff, who is proceeding *pro se,* was granted permission to proceed *in forma pauperis* on August 20, 2010, and paid an initial partial filing fee on September 10, 2010.

On October 4, 2010, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate. The Clerk was directed to issue summonses and forward copies of the complaint to the United States Marshal Service for service of process.

After a December 3, 2010 motion by the defendants for an extension of time in which to answer was granted by Order entered on December 15, 2010, on January 6, 2011, the defendants filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment, with a Memorandum in Support. A Roseboro Notice was issued the next day. The plaintiff filed a reply to the motion to dismiss on January 21, 2011.

1

After the defendants' June 1, 2011 motion for an extension of time to file a reply was granted by Order entered on June 2, 2011, defendants filed a motion for a second extension on June 20, 2011. That motion was granted by Order entered on June 21, 2011. Defendants filed their reply to plaintiff's response to their motion to dismiss or in the alternative, for summary judgment, on July 12, 2011.

This case is now before the undersigned pursuant to LR PL P 83.02, *et seq.*, for a report and recommendation.

## II. The Pleadings

### A. The Complaint

In the complaint, the plaintiff raises two claims:

1) the defendants interfered with his access to appellate counsel, by repeatedly rejecting and returning the Anders[1] brief sent to him by counsel, effectively denying him the opportunity to communicate with counsel, prepare a *pro se* brief, or participate in his own appeal, in violation of his Sixth Amendment rights; and

2) while housed in the Special Housing Unit ("SHU"), he was deprived of all legal materials necessary to prepare and timely file a § 2255 motion within the applicable statute of limitations, in violation of his First Amendment rights.

He alleges that he suffered an actual injury, because his appeal was dismissed without his filing a *pro se* brief presenting his issues and he could not timely file his § 2255 motion.

As relief, he requests "nominal damages" of $1.00, punitive damages of $10,000.00, and "declaratory relief stating defendants' actions were in violation of the First and Sixth Amendments

---

[1] Anders v. California, 386 U.S. 738 (1967).

2

to the U.S. Constitution."

**B. The Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment, with a Memorandum in Support (Dkt.# 26 and 27)**

The defendants attach sworn affidavits from the defendants and others[2] in support of their responses.

Defendant James N. Cross did not become Warden at U.S.P Hazelton until October 2008 and denies that he had knowledge of or restricted plaintiff's access to incoming mail, legal or otherwise. Further, inmates placed in SHU do have access to their legal materials and he never at any time instructed staff to withhold plaintiff's incoming legal materials or legal materials already in his possession.

Defendant Captain T. Bergami likewise denies that he was unaware that plaintiff's incoming mail was being rejected. Further, he did not personally process mail at U.S.P. Hazelton. Plaintiff was placed in the Special Housing Unit ("SHU") as a direct result of assaulting another inmate and defendant Bergami had no involvement in that placement; it was the practice at U.S.P. Hazelton to permit inmates in SHU to retain their legal materials; defendant Bergami has no memory of confiscating legal materials from plaintiff nor any memory of plaintiff complaining to him of any such confiscation.

The Plaintiff has not exhausted his administrative remedies.

---

[2] Besides the defendants, affidavits were provided by Kevin Littlejohn, Paralegal Specialist and Administrative Remedy Clerk of the Mid-Atlantic Regional Office of the Federal Bureau of Prisons ("BOP"), regarding plaintiff's use of the administrative remedy process on five occasions while at U.S.P. Hazelton, but never using it to report an inability to receive legal materials, and Luke Custer, Supervisory Correctional Systems Officer of the BOP at Hazelton, attesting to the issues with handling of "special" or legal mail versus general mail at Hazelton; denying any evidence within the legal mail logs to show plaintiff received legal mail during the time periods alleged, let alone had legal mail rejected; and stating that if plaintiff received attorney correspondence that did not comport with the BOP's legal marking policy, such mail would have been returned to the sender and plaintiff would have received a rejection notice. He found no evidence of rejection notices prepared for plaintiff during the relevant time period.

3

Plaintiff's claims against both defendants should be dismissed for lack of personal involvement.

Despite the fact that plaintiff does not specify whether he is suing the defendants in their individual or official capacities, Bivens liability may not be premised upon a theory of *Respondeat Superior*. Furthermore, plaintiff's Bivens claims are barred by the applicable statute of limitations.

## C. **Plaintiff's Response to Motion to Dismiss, or in the Alternative for Summary Judgment (Dkt.# 31)**

Plaintiff avers that on four occasions while he was housed at U.S.P. Hazelton, appellate counsel attempted to mail him an Anders brief, seeking to withdraw from representation and advising him of his right to file a *pro se* appellate brief. Each time, the mail containing the brief was rejected, first by Warden Joe Driver ("Driver"), and then by Warden James Cross ("Cross"), who succeeded Driver, because it contained an attached copy of his presentence investigation report. Plaintiff asserts that both Driver and Cross, as well as defendant Bergami ("Bergami") were made aware that staff were detaining needed legal materials. Further, he avers that defendants, who he concedes did not personally detain his legal materials, were "personally aware" that it was happening because he notified them that it was, and that "[b]ecause it is their responsibility as supervisors to ensure subordinates follow policy, once Plaintiff made them aware of a problem it became their responsibility to rectify" it.[3]

Plaintiff asserts that he tried repeatedly to obtain his legal materials without success. He concedes that he did not exhaust his administrative remedies. However, he contends that he

---

[3] Plaintiff's attached declaration in purported support (Dkt.# 31-2) of this claim actually directly contradicts it. In the declaration, he asserts that while in the SHU, he repeatedly attempted to notify both defendants of his need to access his legal materials when they toured through the SHU, speaking to inmates to see if they had issues that needed addressed, but that they were incapable of understanding him because they did not speak Spanish and he could not speak English.

4

although he repeatedly attempted to utilize the prison's grievance process to report the problem, he was prevented from doing so because of his inability to communicate in English, claiming that the administrative remedy process at U.S.P. Hazelton is "effectively unavailable" to him and other Spanish-speaking inmates who are not functionally literate in English. He asserts that because an inmate's personal inability to access the grievance system can render the system unavailable, the defendants should not be permitted to benefit from this by exploiting the exhaustion provision.

Plaintiff concedes that defendant Cross was improperly named as to the mail rejection claim and seeks to substitute Warden Joe Driver as to that claim. However, with regard to the withheld legal materials claim, plaintiff asserts that neither Cross nor Bergami is entitled to dismissal.

Plaintiff denies that July 26, 2008 is the applicable statute of limitations on his claim and/or that the statute of limitations has expired on his claims. Further, he asserts that he has sustained an "actual injury," in that he was prevented from participating in his direct appeal, and he was prevented from timely filing a motion pursuant to 28 U.S.C. § 2255.

For the above reasons, plaintiff contends that the motion to dismiss or in the alternative, for summary judgment, should be denied.

## D. Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss or, In the Alternative, For Summary Judgment (Dkt.# 50)

Defendants attach a number of sworn affidavits from various BOP personnel, as well as supplemental sworn declarations from each of the defendants.

Plaintiff's recent allegation, that the defendants impeded his access to the court by rendering the prison's administrative remedy process inaccessible to him and other inmates who do not speak English should be dismissed, because there is ample evidence that plaintiff was able to read, write and speak English while at U.S.P. Hazelton. Furthermore, his contention that he should be excused

from exhausting his administrative remedies prior to filing suit because remedies were "unavailable" to him due to the same alleged language barrier, likewise lacks merit. Plaintiff does not allege that either defendant contributed to making the administrative grievance process unavailable to him, nor has he presented any evidence to show that he asked either defendant for assistance in accessing the program. Plaintiff's claim that he should be exempt from satisfying the exhaustion requirement of the Prison Litigation Reform Act ("PLRA") has no support in fact or law and should be dismissed.

Plaintiff has failed to prove he never received his legal materials and his claims should be dismissed.

Finally, plaintiff's claim of interference with access to the courts against the defendants must fail, because he fails to establish that he suffered harm as a result of their alleged actions.

### III. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. Rule 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, *supra* at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, *supra* at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, *supra* at 587 (citation omitted).

## IV. Analysis

### A. Exhaustion

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[4] and is required even when the relief sought is not available. Booth *supra* at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378 (2006) (recognizing the PLRA provisions contain a procedural default component).

The Bureau of Prisons makes available to its inmates a three-level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Morgantown, those appeals are

---

[4] Id.

sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland). If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

Here, plaintiff concedes that he filed no grievances about either his denial of access to his legal mail or the alleged confiscation of the legal materials necessary to timely file his §2255 motion, claiming that the administrative remedy system was inaccessible to him because he could not communicate in English.

A thorough review of the entire record, including plaintiff's BOP education and discipline records provided by the defendants in their reply to plaintiff's response to their motion to dismiss, reveals that the plaintiff's claim that the administrative remedy system was inaccessible to him because of his purported language barrier has no merit. The Government has provided more than ample evidence to indicate that upon his arrival at U.S.P. Hazelton in September, 2006, plaintiff was already capable of communicating in English, both verbally and in writing.[5] He completed an admission/orientation program that included, *inter alia,* education on the administrative remedy program and mail room procedures, and on October 2, 2006, signed an acknowledgment indicating he had attended the classes and received the orientation on the topics. (Dkt.# 50-1 at 3 - 4 and 8).

---

[5] Upon his arrival at Hazelton, he was given listening and reading placement tests. Although he scored high on both (214 and 218, respectively), his scores were not sufficiently high enough to permit him to "test out of" taking "English as a Second Language" ("ESL") classes, which requires a score of 225, indicative of an eighth grade level of comprehension. Plaintiff's scores indicated a fifth grade level of comprehension. Accordingly, he was enrolled in the ESL program at Hazelton from January 21, 2007 until June 17, 2010. While enrolled, he demonstrated his ability to comprehend and follow instructions in English, and successfully complete assignments. During the time he was enrolled in ESL, he scored a 224 on the "Level B" reading test, considered a high score. (Dkt.# 50-2 at 3). Although he ultimately did not receive final scores high enough to obtain certification, he did demonstrate a level of proficiency in speaking, comprehending and reading English. Of note, during his enrollment in the ESL class, he also had regular access to the teacher as well as tutors in the Education Department.

He later used an "Inmate Request to Staff," to update his emergency contact information and visitors' list, demonstrating his ability and awareness of the proper channels necessary to access the system to obtain assistance.[6] (Id. at 4). He personally used the administrative remedy system on five different occasions, but never once filed a grievance regarding interference with access to legal materials or legal mail. (Dkt.# 27, Exh. 1 at 2 - 3 and Attachment C). Further, he participated in five Discipline Hearings for various infractions committed at U.S.P. Hazelton between April 16, 2007 - March 8, 2009; at each hearing, conducted in English, he was an active participant without the need, request for, or assistance of an interpreter. (Dkt.# 50-3 at 2 - 6).

It is apparent that plaintiff never even attempted to initiate the administrative remedy process with regard to the claims raised in the complaint. The record simply does not support his claim that he should be exempt from the PLRA requirement of exhaustion, because he was prevented from doing so by a language barrier. Accordingly, his claims are not exhausted. Further, because the plaintiff cannot now exhaust his claims, those claims are procedurally defaulted.

Notwithstanding the failure to exhaust administrative remedies, the plaintiff's complaint also fails to state a claim for which relief may be granted and should also be dismissed for that reason

## B. Failure to State a Claim

### 1. Access to Courts

---

[6] The declaration of Jeremy Pinson, plaintiff's jailhouse lawyer (incarcerated with him at Talledega, after plaintiff was transferred from Hazelton), attached to plaintiff's response to defendants' motion to dismiss, avers that Pinson utilized the prison grievance process on his own behalf more than 200 times and "over 500 times" in assisting other inmates; prepared BP-9 Forms for plaintiff to access the grievance system in the past, and spoke to the Correctional Counselor to facilitate their submission to the Warden. Further, Pinson avers, "[a]ny time that Mr. Reyes receives documents from the court or attorneys in the case, it is necessary for him to send it to myself to read and translate for him, then assist him in preparing responses and complying with Court Rules which are available to inmates in English only." (Dkt.# 31-7 at 3). It begs the question, why, if plaintiff sought Pinson's assistance in translating and drafting documents, preparing petitions for court, and filing other grievances, he failed to obtain the same type of assistance from his teacher and tutors in his ESL classes at Hazelton, if he needed it, to file grievances over the purported interference with his legal mail and access to his legal materials?

The right of access to the courts is guaranteed by the First Amendment. In <u>Bounds v. Smith</u>, 430 U.S. 817, 97 S.Ct. 1491, 52 L. Ed. 2d 72 (1977), the U.S. Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." <u>Bounds</u> at 828. However, almost twenty years later, the Supreme Court repudiated much of its holding in <u>Bounds</u>, when it held that because inmates have "no freestanding right to a law library or legal assistance," they cannot establish relevant actual injury merely by challenging the adequacy of a prison's law library or legal assistance program. Instead, the Court held that an "inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal clam." <u>Lewis v. Casey</u>, 518 U.S. 343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996).

When alleging denial of access to the courts, an inmate must make specific allegations and identify an actual injury resulting from official conduct. <u>Cochran v. Morris</u>, 73 F.3d 1310 (4th Cir. 1996). "A showing of injury is required in order to avoid adjudication of trivial claims of deprivation." <u>Id</u>. at 1317. Actual injury sufficient to sustain a cause of action for denial of access to the courts is present where, for example, an inmate deprived of legal materials is unable to meet court imposed deadlines as a result of the deprivation. <u>Roman v. Jeffes</u>, 904 F.2d 192, 198 (3rd Cir. 1990). Nonetheless, the injury requirement cannot be satisfied by just any type of frustrated legal claim. <u>Lewis v. Casey</u>, *supra* at 354. Since <u>Bounds</u>, nearly all access-to-court claims involve attempts at direct appeals, or habeas petitions, and the Supreme Court has extended the universe of relevant claims to civil actions, "only slightly." <u>Id</u>. (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539

(1974)(extending access-to-courts claims to cases arising under § 42 U.S.C. 1983, but only when needed to vindicate "basic constitutional rights").

In Christopher v. Harbury, 536 U.S. 403, 415, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002), the Supreme Court set forth three criteria that a court must consider in determining if a plaintiff has alleged a viable claim of denial of the right to access to the courts, specifying that a party must identify each of them in its complaint: 1) a non-frivolous underlying claim; 2) the official acts frustrating the claim; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit.

Here, despite plaintiff's claims that he was: 1) prevented from communicating with counsel and/or participating in his own appeal because a copy of the Anders brief from appellate counsel was repeatedly rejected by the prison mail system; and 2) prevented from timely filing a § 2255 motion because his legal materials were confiscated for approximately three years and four months while he was in SHU,[7] the plaintiff has failed to establish that he suffered an injury. While he alleges that his appeal was dismissed because he did not receive any of the four copies of an Anders brief his appellate counsel apparently attempted to mail him between January 31, 2007 - May 5, 2008,[8] he

---

[7] Plaintiff alleges he was continuously in SHU or in transit, without access to his confiscated legal materials from March 7, 2007 until on or about July 2, 2010. The defendants' reply to plaintiff's response to their motion to dismiss, or in the alternative, for summary judgment, provides BOP records showing that plaintiff was in the SHU at Hazelton from March 9, 2007 until June 15, 2010, then in transit until June 21, 2010.

[8] The defendants' reply to plaintiff's response to their motion to dismiss, or in the alternative, for summary judgment, appears to confuse plaintiff's claims, understandably so, as plaintiff has alleged contradictory facts and commingled his own claims. A careful reading of his complaint and subsequent pleadings reveals that plaintiff is simultaneously and contradictorily claiming that the Anders brief was repeatedly rejected and withheld from him before he was placed in the SHU (Dkt.# 1 at 4) and also that it was withheld from him, along with all his other legal materials, while he was in SHU (Dkt.# 31-2 at 3), preventing him from preparing a *pro se* brief and/or participating in his own appeal. However, the Anders brief issue was moot by the time plaintiff went in the SHU, because a brief on the substantive issues had already been submitted on August 18, 2008, six months and three weeks before plaintiff went in the SHU, and the appeal was decided by the 2nd Circuit on February 19, 2009. In his Notice Regarding Late Filing of 28 U.S.C 2255 in U.S. District Court, Eastern District, New York, plaintiff admits that he received a copy of the 2nd Circuit's decision on February 24, 2009 (U.S.D.C. E.D. N.Y Dkt.# 3-2 at 2)(2:10cv3517);

has not proven he never received the brief.[9] To the contrary, in his § 2255 motion, currently pending in U.S. District Court for the Eastern District of New York,[10] plaintiff implicitly admits having received the brief.[11] Moreover, even assuming, *arguendo,* that plaintiff did not receive any of the

---

this was almost two weeks before he went into the SHU on March 9, 2009. (Dkt.# 50-1 at 12).

Plaintiff also alleges that he advised the defendants to cease and desist rejecting his legal mail during the time appellate counsel was still attempting to send it to him (before he was placed in the SHU), asserting that they were on notice that it was occurring and did nothing to ensure their subordinates stopped it (Dkt.# 31 at 7). When challenged by the defendants in their memorandum in support of their motion to dismiss to provide specifics as to when he notified defendants, in his response, he alleged that his repeated personal notifications to defendants to stop rejecting his legal mail occurred while he was in the SHU (although he made no allegation that incoming legal mail was rejected during that time period) but that he was *unsuccessful in conveying his message to them* because they only spoke English and he, only Spanish. (Dkt.# 31-2 at 3).

It appears that plaintiff is attempting to assert that: 1) the Anders brief was repeatedly rejected by the prison mail system before he ever went in the SHU; he never obtained a copy to read before the 2nd Circuit reached its February 19, 2009 decision, and thus he could not participate in his appeal or prepare his own *pro se* appellate brief; and 2) all of his legal materials (including, presumably, the Anders brief and a copy of the February 19, 2009 decision on his appeal) were confiscated from him when he went in the SHU, and thus he could not timely prepare and file his § 2255 motion. As for plaintiff's claims that the defendants were aware that his mail was being interfered with and his legal materials withheld, plaintiff's claims make no sense because he has alleged both that he did and did not advise the defendants of the problem.

[9] Attached to defendant's reply to plaintiff's response to their motion to dismiss is a sworn affidavit from Roger Ware, BOP Senior Officer Specialist at U.S.P. Hazelton, who worked in the mailroom during the times plaintiff alleges his Anders brief was repeatedly rejected. He attests to having received and rejected a copy of plaintiff's presentence investigation report ("PSR") from a piece of plaintiff's incoming mail on March 5, 2007; that for safety reasons, the BOP prohibits inmates from possessing copies of their PSR but that inmates may view a copy of their PSR by submitting a request to staff. He averred that he did not specifically recall this particular rejection, but that it is BOP policy when correspondence is rejected, that the inmate be notified when it is returned to the sender; and that if a piece of mail is not permitted to be received, the inmate would be called to the mailroom to decide whether it was to be returned to sender in its entirety or whether only the prohibited document would be returned. If an inmate were in the SHU at the time, the BOP policy was to return only the prohibited part of the mail to the sender and allow the non-prohibited part to be delivered to the inmate.

[10] Plaintiff filed his § 2255 motion on July 26, 2010 in U.S. District Court, Eastern Division, New York, on July 26, 2010, the same day he filed this Bivens action. (U.S.D.C. E.D., NY Dkt.# 3) (2:10cv3517). Although the motion was untimely by approximately two months and seven days, plaintiff included with it a Notice Regarding Late Filing of 28 USC 2255, requesting equitable tolling on the grounds that he was confined without access to his legal materials in the SHU from March 7, 2009 until June 15, 2010, then in transit from June 15, 2010 until June 21, 2010, and did not regain possession of his legal documents necessary for preparing his motion until approximately July 2, 2010. (U.S.D.C. E.D., NY Dkt.# 3-2 at 2 -3) (2:10cv3517). No ruling on the motion has been entered to date; the Government has been granted twelve extensions of time and has not yet responded.

[11] Plaintiff claims appellate counsel was ineffective when he "filed an Anders brief on appeal **and delivered such with Notice of right to file *pro se* brief upon Movant in the English language to Movant who was in prison** without translation which Movant was unable to understand, read or comprehend. (2nd Cir. Dkt.# 3 at 4) (2:10cv3517) (emphasis added). Of note, plaintiff's § 2255 motion makes no mention of the fact that he had been enrolled in English as a Second Language classes throughout the entire time he alleges (in this court) that appellate counsel attempted to mail him the Anders brief, nor that even before taking the class, placement testing demonstrated

13

copies of the Anders brief, the appellate docket reveals that counsel's motion to be relieved pursuant to Anders v. California was denied on May 20, 2008 and counsel was ordered to file a substantive brief. Accordingly, because plaintiff was continuously represented by counsel, there was never any need for him to present his own *pro se* brief. His appeal was not "dismissed because . . . [he] had not filed a *pro se* brief presenting. . . [his] issues before the court." His appeal was dismissed on its merits; thus he was never denied the opportunity for a direct appeal.

As for his claim that he was prevented from timely filing a § 2255 motion, plaintiff did in fact file a § 2255 motion, along with an explanation of the reason for its untimeliness, and as yet, has not received an adverse ruling on its untimeliness. Thus, he cannot prove he has sustained an actual injury. Moreover, plaintiff's claim that his legal materials were withheld from him during the time period for timely filing of a § 2255 motion is unsupported, while the declarations of both defendants, attached to their memorandum in support of their motion to dismiss, or in the alternative, for summary judgment, indicate that it Hazelton's policy to permit inmates placed in SHU at Hazelton to retain possession of their legal materials. (Dkt.# 27, Exh. 2 at 1 and Exh. 3 at 2).

Of note, the record reveals that during most of the one year, three months and five-day time span[12] that he alleges appellate counsel was attempting to send him a copy of the Anders brief, plaintiff was in the general population.[13] Plaintiff's claim that defendants prevented him from communicating with appellate counsel is also unsupported and actually controverted by his own

---

a level of proficiency in comprehending, reading and speaking English.

[12] According to plaintiff's appellate counsel, the four copies of the Anders brief were mailed to him between January 31, 2007 and May 5, 2008. (Dkt.# 31-4 at 2 - 4).

[13] The BOP records attached to defendants' reply to plaintiff's response to their motion to dismiss, or in the alternative, for summary judgment, indicate that plaintiff was not in SHU during any of the times that the Anders brief was mailed; out of the entire time period, he was only in SHU for eighteen days, from April 16 - 23, 2007 and June 15 - 26, 2007. (Dkt.# 50-1 at 14).

14

evidence.[14] Plaintiff has produced nothing to show that the defendants prevented him from communicating with appellate counsel by phone or in writing during the appellate period, or that defendants ever authorized, sanctioned, or were even aware of the purported repeated rejection of his legal mail. Further, the record reveals that upon arrival at Hazelton, plaintiff acknowledged, in writing, receiving instructions[15] on how incoming legal mail was handled at the prison; it was plaintiff's responsibility to advise appellate counsel how to properly label his incoming legal mail so that would be opened in his presence.

The plaintiff has not alleged a viable claim of denial of access to the courts. Christopher v. Harbury, *supra* at 415. He has failed to show that the defendants prevented him from communicating with counsel, interfered with his access to the court, or that he suffered any actual injury.

## C. Respondeat Superior

Liability for violations of a constitutional right is "personal, based upon each defendant's own" acts. Trulock v. Freeh, 275 F.3d 391, 401 (4th Cir. 2001) (internal citation omitted). Thus, in order to establish liability, a plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v.

---

[14] Appellate counsel's Declaration in Support of Motion to be Relieved, originally submitted to the 2nd Circuit Court of Appeals on May 9, 2008, attached to plaintiff's reply to defendants' motion to dismiss, avers that plaintiff phoned his office from Hazelton "a few months after" the March 1, 2007 second mailing of the Anders brief, and "explained to my receptionist that because the presentence investigation report was annexed as part of the appendix of the *Anders* brief, the Appellant was not permitted to review the brief, because he was not permitted to view the presentence investigation report, according to prison personnel." (Dkt.# 31-4 at 3).

[15] The instructions were provided in English.

Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right. Rizzo v. Good, 423 U.S. 362 (1976).

Nonetheless, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a civil action if the plaintiff shows that "1) the supervisory defendants failed to provide an inmate with needed medical care; 2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or 3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id. However, a plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. Id. Rather, a plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id.

Here, plaintiff concedes that defendants did not personally interfere with his legal mail or withhold his legal materials. Instead, he appears to have merely named the defendants in their official capacity as Warden and (former) Captain at U.S.P. Hazelton, respectively. However, plaintiff has not provided any evidence to show that either defendant was ever aware of, let alone tacitly authorized or was indifferent to an alleged violation of his constitutional rights.[16] Thus,

---

[16] In contrast, both defendants have provided declarations denying they were ever aware that plaintiff's legal materials were being withheld; asserting that it is not the BOP's policy to withhold the legal materials of inmates in the SHU; and both deny plaintiff ever told them or attempted to tell them of the problem, either in English or Spanish. Further, defendant Cross's supplemental declaration advises that at the time plaintiff was in SHU, there were several Spanish-speaking staff who made rounds with them and who were present during mealtimes, who could have translated for plaintiff if he had actually attempted to voice a complaint in Spanish. (Dkt.# 50-5 at 2). Plaintiff, on the other hand, both claims he made the defendants aware of the problem by personally telling them, and then

plaintiff cannot maintain this action against the defendants.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the defendant's Motion to Dismiss, or Alternatively, for Summary Judgment (Dkt.# 26), be **GRANTED** and judgment be entered for the defendant. In light of this finding, the undersigned **DENIES** as moot the plaintiff's pending motion to amend or substitute party (Dkt.# 32) and his motions to appoint counsel (Dkt.# 31 and 33), because the claims plaintiff raises, including those regarding his inability to communicate in English, not only lack merit, they fail to state a claim on which relief can be granted; therefore no counsel is needed to advance them.

**Within fourteen (14) days** after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208.

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Report and Recommendation to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States

---

provides a declaration in purported support of this claim that directly contradicts it.

District Court for the Northern District of West Virginia.

    DATED: July 25, 2011.

*James E. Seibert*
JAMES M. SEIBERT
UNITED STATES MAGISTRATE JUDGE